**Santo MUSUMECI**

v.

**REBORN PRODUCTS CO., INC., et al.**

**Civ. A. No. 71–594.**

United States District Court,
E. D. Pennsylvania.

June 10, 1975.

Herbert L. Olivieri, Philadelphia, Pa., for plaintiff.

Robert Abramson, Philadelphia, Pa., for Reborn and Fords.

Harry P. Voldow, Philadelphia, Pa., for Novimex.

Stanley H. Cohen, Philadelphia, Pa., for Reborn and Fords.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

Plaintiff brought this case against Defendants Novimex, Ltd., Reborn Products, Inc., Milton Ford, and Allan Ford, alleging that Novimex breached a contract it had with plaintiff, and that Defendants Reborn, Milton Ford, and Allan Ford conspired to and did induce this breach between Novimex and plaintiff.

At the close of plaintiff's evidence, we granted the motions of the several defendants for directed verdicts. We subsequently realized that in a case tried before the court without a jury, the proper procedural device for disposition of a case at the close of plaintiff's evidence is not a directed verdict, but simply the entry of judgment. F.R.Civ.P. 41(b). This procedural matter does not, however, change the result in this case, for our decision was and remains that plaintiff did not produce evidence from which we could conclude in favor of plaintiff on its charges against the respective defendants.

Plaintiff's testimony, plus the statement of facts to which the parties stipulated, showed the following picture.

On March 15, 1970, plaintiff, operating Sunrise Importing Company, entered into a contract with Defendant Novimex, Ltd., a Swiss exporter, by which plaintiff acquired the exclusive American sales rights for a pour spout which Novimex exported. This contract between plaintiff and Novimex obligated plaintiff to order an initial shipment of 25,200 spouts, and to order an additional 100,000 spouts before September 30, 1975, and that if plaintiff failed to do so, Novimex would have the right to export to other companies in the United States. The contract also provided that "quantities to be ordered, prices and payment terms (would be) subject to separate arrangement." The contract also provided that the agreement was to be construed according to Swiss law.

Pursuant to this contract, plaintiff ordered and received 25,200 spouts in March 1970.

In April, 1970, plaintiff and defendant Reborn Products, Inc. ("Reborn"), through its President Allan Ford, entered into negotiations for the sale of the spout by plaintiff to Reborn.

On May 27, 1970, Allan Ford and Milton Ford signed a document prepared by plaintiff which provided that Reborn would make no attempt to compete with plaintiff Musumeci's company with respect to the spout plaintiff was importing from Novimex.

On the insistence of the Fords, however, the document also provided that the document's validity was contingent upon the execution of an agreement between plaintiff's company and Reborn designating Reborn as the exclusive distributor of the spout plaintiff's company was importing.

Although Reborn and plaintiff discussed entering into a contract designating Reborn as distributor of the spout in the United States, Reborn declined to enter into such contract in view of substantial advertising and marketing expenses which would be incurred, unless plaintiff secured long-term exclusive importing rights from Novimex.

Pending plaintiff's obtaining such long-term rights Reborn agreed to buy from plaintiff quantities of the spout for resale in this country and did purchase, on separate occasions, 25,200, 14,000, and 56,700 units respectively in May and June of 1970 on terms agreeable to the parties.

In the purchase of these spouts, Reborn paid its own promotional, advertising, and sale costs. The relationship between plaintiff and reborn on this purchase was one of buyer/seller, rather than principal/agent or supplier/distributor.

On May 27, 1970, Allan Ford and Milton Ford executed a document attached as Exhibit "B" to plaintiff's complaint against Reborn and the Fords. This document provided that neither Reborn nor the Fords would make any attempt to compete with plaintiff's importing company ("Sunrise") with respect to the spout. The document also provided, however, that the validity of the agreement contained therein was contingent upon plaintiff's designating Reborn as plaintiff's exclusive distributor of the spout.

Other than this document dated May 27, 1970, no documents were executed by plaintiff and Reborn or the Fords.

Following receipt by defendant Reborn in June, 1970, of the third order of 56,700 units purchased from plaintiff, plaintiff and Reborn concluded that these units were defective and refused to accept them.

In July, 1970, Mr. Anthony Ammann, Novimex's representative, came to Philadephia, Pennsylvania, because of the dispute concerning the allegedly defective June shipment. Mr. Ammann subsequently agreed the shipment was defective, the shipment was returned to Novimex, and Novimex forwarded a substitute shipment of 56,700 units, which Reborn then purchased from plaintiff.

During his visit to Philadelphia, and after the meeting between plaintiff, Ammann and the Fords, Ammann met with Milton Ford, without plaintiff's presence. When Mr. Ammann told plaintiff of this meeting, plaintiff objected, expressing the fear that Novimex and Reborn would decide to deal directly and exclude plaintiff. Mr. Ammann assured plaintiff this would not happen, and after returning to Switzerland wrote to the Fords to confirm that the Fords would need an order of 100,000 spouts at the end of August, and that the Fords would place the formal order for them through plaintiff.

Following the adjustment of the above-described defective order, Mr. Kenneth Klausner, an officer of Reborn, went to Switzerland with authorization by letter from plaintiff to order additional spouts from Novimex on plaintiff's behalf. Klausner subsequently placed orders for 57,600 and 44,460 spouts with Novimex.

After Mr. Klausner's return, plaintiff signed an order for the 44,640 spouts Mr. Klausner had ordered on plaintiff's behalf. This order provided also that

plaintiff would open a letter of credit for the order with the Union Bank of Switzerland.

Novimex shipped the first of the orders, for 57,600, which plaintiff accepted and 25% of which Reborn purchased immediately from plaintiff. Mr. Milton Ford of Reborn took the position that Reborn would purchase the remaining 75% of the order of 57,600 when it had distributed the 25% portion which it had already purchased from plaintiff.

Plaintiff objected to this position on the part of Reborn, and contacted Mr. Ammann of Novimex by telephone requesting that until plaintiff and Reborn resolve their dispute, Mr. Ammann not ship the order of 44,640 spouts which Mr. Klausner had also ordered. Plaintiff subsequently telegrammed Novimex to the same effect, ordering Novimex not to ship the order for 44,640 units.

Mr. Ammann, however, informed plaintiff that he had to ship the order for 44,640 spouts because he was under pressure from the manufacturer and might lose his agency with the spout manufacturer if he failed to ship the order.

Despite Mr. Ammann's requests, plaintiff did not obtain a letter of credit for the order of 44,640 spouts which Mr. Klausner had ordered on plaintiff's behalf, and for which plaintiff had signed an invoice to Novimex.

When plaintiff continued to attempt to persuade Mr. Ammann not to ship the order for 44,640 spouts, Mr. Ammann said he would ship the order directly to Reborn and would pay plaintiff per unit of all units shipped to Reborn and the Fords until December 31, 1970, at which point plaintiff would be eliminated from any further relationship with Novimex.

On October 16, 1970, plaintiff received a letter from a Dr. Faessler, acting as attorney for Novimex, which informed plaintiff that because plaintiff had not fulfilled its commitments of the agreement of March 12, 1970, with Novimex, Novimex was no longer bound by that agreement and thus no longer required to recognize plaintiff as the exclusive distributor of the spouts exported by Novimex.

Thereafter, Novimex ceased dealing with plaintiff and commenced direct sales to Reborn.

Against these facts, we turn to the charges which plaintiff alleges against the defendants. First, plaintiff charges Defendant Novimex with breach of contract for suspending shipments of the pour spouts to plaintiff. As noted above, the contract between plaintiff and Novimex provided that Swiss law would govern the construction of the contract. The only evidence we have as to Swiss law, however, namely, the letter from Dr. Faessler to plaintiff on behalf of Novimex, shows that under Swiss law plaintiff breached its contract with Novimex, and not vice versa.

Even if Swiss law did not govern the above contract, however, we think it clear that plaintiff breached its contract under the most basic principles of our contract law. As noted above, the contract between plaintiff and Novimex provided that terms of payment for individual shipments would be subject to individual arrangement. Under the agreement subsequently made for the order of 44,640 spouts, plaintiff was to obtain and forward a letter of credit for that shipment, which Novimex was to ship at the end of August. When plaintiff failed to obtain such letter of credit, and instead tried to persuade Novimex to hold the shipment, plaintiff breached the terms of the agreement for the shipment, and thus breached its contract with Novimex, since that contract expressly incorporated the terms of the agreement for the shipment of the 44,640 spouts. This breach was a material one, since it involved the terms of payment for the shipment.

Accordingly, once plaintiff committed this material breach of the contract, Novimex was free thereafter, without committing any breach of con-

tract on its own part, to refuse to honor its promise under the contract to ship the spouts to plaintiff for resale in the United States. We thus find no merit in plaintiff's claim that Novimex breached its contract with plaintiff.

We similarly find no merit in plaintiff's claim that Defendants Reborn and the Fords induced the breach of contract by Novimex. As noted above, Novimex committed no breach of contract with plaintiff, and thus Defendants Reborn and the Fords cannot be said to have induced a breach of contract.

■ More important, however, we do not believe plaintiff's evidence in any way shows any activity taken by Reborn and the Fords with the purpose of inducing Novimex to cease its business relation with plaintiff. Plaintiff introduced evidence only that the Fords met with Mr. Ammann of Novimex without plaintiff, after plaintiff had introduced them to each other, and that when the dispute between plaintiff and the Fords over payment first arose, Milton Ford conducted an overseas telephone conversation with Mr. Ammann immediately after a three-way conversation between plaintiff, Milton Ford, and Mr. Ammann had been cut off. Plaintiff introduced no evidence whatsoever, however, as to the substance of these conversations, and we simply cannot conclude from the evidence only that the conversations occurred that the Fords said anything in these conversations with the purpose of inducing such cessation of dealings between Novimex and plaintiff.

Finally, the evidence fails to show that anything the Fords might have said or done in any way caused the break between Novimex and plaintiff. To the contrary, plaintiff's own evidence showed clearly that even after the above-described conversations between the Fords and Mr. Ammann, Novimex continued to deal with plaintiff on the same basis as had always existed, and that Novimex ceased dealing with plaintiff only after plaintiff failed to honor its payment obligation to Novimex.

■ Plaintiff also contends that Reborn's importing agreement with Novimex after Novimex ceased dealing with plaintiff constituted a breach of Reborn's agreement with plaintiff. We fail to agree, for the evidence shows that no contract existed to bind the Fords not to import the spouts from Novimex. As noted above, the document which the Fords executed not to compete with plaintiff expressly provided that such agreement by the Fords was contingent upon plaintiff's executing an agreement appointing Reborn the exclusive distributor for plaintiff. Since plaintiff never executed such latter agreement, the Fords' promise not to compete had no binding effect, and the Fords' subsequent agreement with Novimex constituted no breach of contract between plaintiff, Reborn and the Fords.

There remains one claim outstanding in this case as yet. Defendant Reborn brought a counter-claim against plaintiff for trademark infringement. At the time we granted the defendants' motions for directed verdicts at the trial of this case, counsel respectively for Defendant Reborn and plaintiff expressed the view that they believed they could reach a settlement on the counterclaim without further court proceedings. Accordingly, we did not proceed with the trial of the counterclaim.

As of the date of this memorandum, however, no such settlement has been reached. We shall thus enter our order today as to plaintiff's claims since we see no reason to delay the entry of judgment on these claims, see F.R.C.P. 54(b), and we shall set a date for trial of the counterclaim.